# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MICHAEL L.[1]**, | Case No. 6:24-cv-457-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **COMMISSIONER OF SOCIAL SECURITY**, | |
| Defendant. | |

Katherine L. Eitenmiller and Mark A. Manning, WELLS, MANNING, EITENMILLER & TAYLOR, P.C., 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

William Narus, Acting United States Attorney, and Kevin Danielson, Executive Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; and Thomas Zimarowski, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 6401 Social Security Boulevard, Baltimore, MD 21235. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Michael L. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying his application for Disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Insurance Benefits ("DIB") under the Social Security Act ("Act"). For the reasons stated below, the Court affirms the Commissioner's decision.

## STANDARD OF REVIEW

The decision of the administrative law judge ("ALJ") is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla" and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225-26.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff applied for DIB on January 16, 2019, alleging an onset date of May 29, 2016. AR 208, 239. Plaintiff's date of birth is February 20, 1988, and he was 28 years old on his alleged disability onset date. AR 239. Plaintiff alleges he is unable to work due to chronic migraine pain, post-traumatic stress disorder ("PTSD"), and lower left leg and ankle injury. AR 91.

The agency denied Plaintiff's claim both initially and upon reconsideration, and Plaintiff requested a hearing. AR 89, 110, 144. Plaintiff and his representative appeared before an ALJ for a telephonic hearing on February 9, 2021. AR 36. The ALJ issued a decision denying Plaintiff's claim for benefits on March 3, 2021, AR 16-30, and Plaintiff appealed. AR 206. The Appeals Council denied review, AR 1617, and Plaintiff then appealed to this Court. AR 1625-26. Based on a stipulated agreement between Plaintiff and the Commissioner, the Court reversed the ALJ's decision and remanded for further administrative proceedings. AR 1639-43.

Plaintiff, along with his attorney, attended a second hearing with the ALJ on October 17, 2023. AR 1572. On November 14, 2023, the ALJ issued a decision again finding Plaintiff was not disabled. 1543-71. Plaintiff timely appealed pursuant to 42 U.S.C. § 405(g).

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the analysis continues beyond step three, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC").

The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *See Tackett*, 180 F.3d at 1099; *Bustamante*, 262 F.3d at 954.

## C. The ALJ's Decision

As a preliminary matter, the ALJ found that Plaintiff met the insurance requirements through December 31, 2024. AR 1548. At step one, the ALJ found that Plaintiff engaged in substantial gainful activity during the following periods: July 2020 to September 2020; 2021; and April 2022 to January 2023. AR 1549. There was, however, a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity. *Id.* At step two, the ALJ

found that Plaintiff had the following severe impairments: status post reconstructive surgery of the left ankle and foot, right shoulder impingement and superior glenoid lesions, diabetes mellitus, PTSD, and depression. *Id.* At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets the severity of a listed impairment. AR 1551.

The ALJ then concluded Plaintiff had the RFC to perform light work with the following additional limitations:

> requires work which entails routine repetitive tasks and simple decision making; requires work which requires only superficial and occasional close proximity to coworkers or supervisors, and no more than occasional superficial direct contact with the public; can lift or carry up to 10 pounds frequently and 20 pounds occasionally; stand or walk with normal breaks for a total of six hours in an eight hour workday; sit with normal breaks for a total of six hours in an eight hour workday; requires a sit/stand option while remaining at the workstation (option means that the claimant could sit/stand every thirty minutes for comfort while performing the assigned duties); can perform pushing and pulling motions with the upper and lower extremities within the weight restrictions given; can never climb ladders, ropes or scaffolds; can perform postural activities occasionally and those will be climbing of ramps and stairs, and crawling.

AR 1553.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that there were jobs in significant numbers that Plaintiff can perform, including such representative occupations as cafeteria attendant, small product assembler, and laundry worker. AR 1563-64. The ALJ thus concluded that Plaintiff had not been under a disability under the Act from May 29, 2016, through the date of decision. AR 1564.

## DISCUSSION

Plaintiff argues that the ALJ erred by (A) improperly evaluating the medical opinions of Drs. Samir Ale, M.D., Raymond Nolan, M.D., Ph.D., Karen P. Seymore, D.O., psychologist

PAGE 5 – OPINION AND ORDER

David J. Hobbs, Ph.D., and Scott T. Alvord, Psy.D.; (B) improperly rejecting Plaintiff's subjective symptom testimony; and (C) improperly rejecting the lay testimony of his spouse. The Court addresses each argument.

## A.  Medical Opinion Evidence

Plaintiff filed his application for benefits on January 16, 2019. For claims filed on or after March 27, 2017, federal regulation 20 C.F.R. § 404.1520c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. § 404.1520c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. 20 C.F.R. § 404.1520c(c)(3). An ALJ is not,

however, required to explain how he or she considered these secondary medical factors, unless

he or she finds that two or more medical opinions about the same issue are equally well-

supported and consistent with the record but not identical. 20 C.F.R. § 404.1520c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the

medical opinions" and "explain how [they] considered the supportability and consistency

factors." 20 C.F.R. § 404.1520c(b). The Court must, moreover, continue to consider whether the

ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also*

*Woods*, 32 F.4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for

rejecting a treating or examining doctor's opinion, which stems from the special weight given to

such opinions is likewise incompatible with the revised regulations. . . . Even under the new

regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or

inconsistent without providing an explanation supported by substantial evidence." (citation

omitted)).

### 1. Samir Ale, MD

Dr. Ale provided primary care and medication management for Plaintiff's PTSD. On

December 16, 2020, Dr. Ale submitted a medical opinion in support of Plaintiff's disability

claim. AR 1533-38. The ALJ found Dr. Ale's opinion unpersuasive to the extent that it stated

Plaintiff's psychiatric conditions would cause him to miss more than four days of work a month.

AR 1562, 1538. The ALJ noted that Dr. Ale did "not provide any basis for this." AR 1562.

Additionally, the ALJ stated that the record contained "no evidence of [Plaintiff's] complete

inability to concentrate on work or complete tasks" as stated in Dr. Ale's opinion. AR 1562,

1534. To support her conclusions, the ALJ cited Dr. Ale's treatment notes from June through

October 2020, wherein he reported Plaintiff was "doing well, working full time, and exercising

regularly." AR 1562 (citing AR 1491-92, 1504). The ALJ's conclusions are reasonable and supported by substantial evidence.

Dr. Ale offered no explanation to support his conclusion that Plaintiff's psychiatric conditions would cause him to miss more than four days per month. AR 1538. Dr. Ale's own treatment records, even those discussing Plaintiff's PTSD, consistently describe Plaintiff as pleasant and in no acute distress. AR 1412-13, 1416, 1418, 1420, 1426. Psychiatric evaluations conducted in connection with Plaintiff's U.S. Department of Veterans Affairs ("VA") claims do not support the limitations identified in Dr. Ale's assessment. AR 544-45, 840, 843. Dr. Ale's records similarly contain no indication that Plaintiff cannot concentrate or complete tasks. As far back as 2016, Dr. Ale noted Plaintiff had "no difficulty concentrating" and his treatment notes consistently document Plaintiff's pleasant demeanor and "goal-directed thought processes." AR 1407, 1413, 1426, 1433. Thus, the ALJ's conclusion that Dr. Ale's opinion was not supported by the record is supported by substantial evidence. *See* 20 C.F.R. § 404.1520c(a) (supportability is one of the most important factors in considering the persuasiveness of medical opinions); *see also Coleman v. Saul*, 979 F.3d 751, 757 (9th Cir. 2020) (concluding that the ALJ did not err in rejecting medical opinions that were unsupported by the objective medical evidence).

Plaintiff argues that the ALJ erred in failing to evaluate the full adjudicatory period, relying only on chart notes from June 2020 through October 2020. While the Court agrees that the ALJ did not specifically cite records from the period between June 2016 and June 2020 in her evaluation of Dr. Ale's opinion, the ALJ's conclusions are, nevertheless, a reasonable reading of the record. Moreover, the ALJ's decision contains citations to the entire record, which makes clear to the Court that she considered the entire record in making the disability determination.

*See* 20 C.F.R. § 404.1520(a)(3) (stating that the ALJ is required to evaluate all of the evidence in the record when making a disability determination). Although the Court may not uphold the ALJ's conclusion on a different ground, the Court may consider and cite additional evidence in the record that supports the ALJ's rationale. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006) ("Although the ALJ did not cite the [Program Operations Manual System ("POMS"),] . . . . [t]he Commissioner is not asking this court to invent a new ground of decision; rather, the POMS simply is additional support for the Commissioner's and the ALJ's position.").

### 2.  Raymond Nolan, M.D., Ph.D.

On June 9, 2019, Dr. Nolan, performed a comprehensive musculoskeletal exam of Plaintiff at the request of the agency. AR 779-81. Dr. Nolan opined that Plaintiff should "restrict walking to less than one hour in an eight hour day and standing to less than one hour in an eight hour day" and could "sit for at least six hours in an eight hour day with the option for changing position." AR 781. Dr. Nolan stated that frequent headaches would "preclude reliable work attendance." *Id.*

The ALJ found Dr. Nolan's opinion unpersuasive, in part because he "based his findings on a one-time examination" and the assessed limitations were not "supported by his findings or consistent with the overall record." AR 1558-59. Additionally, the ALJ found that Dr. Nolan "appeared to overly rely" on Plaintiff's "subjective complaints more so than objective medical evidence." AR 1559. The ALJ noted that Dr. Nolan did not explain the basis of each limitation, nor did he tie the assigned limitation to specific examination findings or objective evidence. *Id.*

One-time examinations are frequently used by the agency as a means of further developing the record and resolving ambiguities contained in the record. *See* 20 C.F.R. § 404.1519a. An ALJ may not discount a medical opinion solely for this reason, but must review

the relevant factors. *See* 20 C.F.R. § 404.1520c(c). Nor is the ALJ's conclusion that Dr. Nolan

"appeared to overly rely on the claimant's subjective complaints more so than objective medical

evidence" wholly supported by the record. AR 1559. For example, Dr. Nolan noted during the

examination that Plaintiff reported that "[h]e generally can walk about100 feet limited by pain."

AR 779. The ALJ cited this note in discounting Dr. Nolan's opinion, noting that Plaintiff "did

not assert [a limitation to walking 100 feet] during routine exams to treating providers."

AR 1559. But Dr. Nolan assigned no such walking limitation to Plaintiff in his functionality

assessment and instead limited Plaintiff to walking less than one hour in an eight-hour day,

meaning Dr. Nolan relied on more than Plaintiff's symptom testimony when identifying certain

functional limitations.

The ALJ further commented that "despite the report that [Plaintiff] was off oxycodone in

March 2019, he reported he was using oxycodone to the examiner." AR 1559. Such comments

are similarly unhelpful, as the ALJ fails to explain how this detracts from Dr. Nolan's opinion.

*Id.* Records show that Plaintiff's oxycodone use was tapered to an "as needed every other day"

dose in March 2019. AR 1375-76. The record then shows that Plaintiff continued to report

oxycodone use to providers after March 2019, and even included oxycodone as a prescribed

medication on his disability application, meaning his continued use of the medication was not a

secret. *See, e.g.*, AR 251, 309, 783, 1369, 1465, 1909. Thus, without explanation from the ALJ, it

is unclear to the Court how Plaintiff's ongoing oxycodone use affects the reliability of Dr.

Nolan's June 2019 opinion.

Nevertheless, the ALJ did provide sufficient reasons to uphold her conclusion that the

limitations assessed by Dr. Nolan were not supported in the record. Objective testing performed

by Dr. Nolan yielded largely normal results, including mostly normal strength and range of

motion, and normal reflexes. AR 779-80. Indeed, Plaintiff was observed as "[a]ble to go from sitting to standing without difficulty" and was able to complete the squat rise maneuver without mobility aids. AR 779. Plaintiff had "no obvious muscle atrophy" despite tenderness to palpitation on the left ankle and calf areas. AR 780. Additionally, as the ALJ pointed out, there is little support for Dr. Nolan's proposed limitations based on headache frequency. There is scant evidence of Plaintiff's treatment for headache during the relevant period. Indeed, the record shows he frequently reported to providers he had no issues with headaches. AR 1378, 1395, 1410, 1426, 1915. Thus the Dr. Nolan's proposition that frequent headaches would preclude Plaintiff from reliable work attendance is not supported in the record. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quotation marks omitted).

In sum, although the ALJ partially erred in her assessment of Dr. Nolan's medical opinion, ultimately the ALJ's conclusions are supported by substantial evidence.

### 3. Karen Seymore, D.O.

Dr. Seymore met with Plaintiff on April 21, 2017 in connection with his VA disability application. AR 846-92. Dr. Seymore evaluated Plaintiff's migraine headaches, as well as his ankle, foot, and toe pain, ultimately finding him disabled for the purposes of the VA. The ALJ found Dr. Seymore's opinion unpersuasive, noting she failed to provide any clinical support for her findings, and provided no specific work-related limitations.

Dr. Seymore indicated in a checkbox form that Plaintiff would "occasionally" need to use crutches. AR 876. By way of explanation, Dr Seymore stated "he uses it [crutches] daily, but not present on exam today." *Id.* Dr. Seymore's opinion is ambiguous as to the necessity of any ambulatory devices and she cites to no clinical tests or records to support her conclusions. The

record reflects Plaintiff's inconsistent use of ambulatory devices. AR 511, 526, 528, 591, 611, 822, 1470, 1472. Moreover, no medical provider has elaborated on the medical necessity of ambulatory devices. Thus, the ALJ reasonably concluded Dr. Seymore's opinion as to Plaintiff's need for crutches was not supported and was inconsistent with the record as a whole.

The ALJ similarly rejected Dr. Seymore's opinion exempting Plaintiff from "prolonged standing or walking" because it was "vague" and not defined. AR 1560. The Court agrees that the term "prolonged" is not defined and is thus not a useful metric for the ALJ to accommodate in the RFC.

Plaintiff argues that the ALJ's failure to address Dr. Seymore's evaluation of Plaintiff's headaches amounts to reversible error because "[a]t a minimum, the ALJ was required to evaluate the supportability and consistency of this opinion." Pl. Br. at 16-17. But as the Commissioner points out, Dr. Seymore's VA rating of Plaintiff's headaches does not meet the requirements to be considered a medical opinion. *See* 20 C.F.R. § 404.1513(a)(2) (defining a medical opinion as a statement from a medical source about what a claimant can still do despite their impairments, and whether a claimant has one or more impairment-related limitation or restrictions). Dr. Seymore stated in her VA functional impact assessment of Plaintiff's headaches that "in the service [he] missed work 3-4 [times] per week," and that "[n]ow he misses school/class 50% of the time due to headaches." AR 881. Dr. Seymore concluded the evaluation, stating that "[t]he frequency of prostrating attacks is more than once per month productive of economic inadaptability." *Id.*. This statement does not provide any cognizable limitation, and the evaluation itself is internally inconsistent. For example, Dr. Seymore did not request or review any evidence or medical records in connection with the evaluation. AR 878. The evaluation identified the migraine diagnosis date as April 21, 2017—the same date as the examination—but

indicated the duration as "constant, has not gone away for greater than [one year]." AR 879-80. The ALJ did not err in disregarding this portion of the evaluation, as it provided no articulation beyond vague timelines such as missing "school/class 50% of the time," and "more than once per month productive of economic inadaptability." AR 881.

### 4. David Hobbs, Ph.D.

In September 2017, Dr. Hobbs provided a mental health examination in conjunction with Plaintiff's VA disability application. AR 839-44. The ALJ found Dr. Hobbs's opinion unpersuasive because it was "not well supported or fully consistent with the evidence." AR 1560. For example, the ALJ found Dr. Hobbs's opinion that Plaintiff would "have difficulty establishing and maintaining effective work and social relationships," have "difficulty in adapting to stressful circumstances," and "need[] to work as independently as possible in order 'to avoid human interactions'" to be "vague and based on the claimant's subjective symptoms." *Id.* The ALJ's conclusions are supported by substantial evidence.

Dr. Hobbs's opinion is peppered with vague language, such as Plaintiff would "likely require a working environment as stress free as possible"; he would require "emergency time out periods" to "calm himself following an episode of extreme anxiety or a panic attack"; he would "need to be permitted to leave work early in case he is not able to calm himself"; and would require allowances for tardiness or absences "for when he is unable to sleep the night before going to work." AR 844. These are not, as the ALJ pointed out, functional limitations that can be translated into Plaintiff's RFC.

The one cognizable limitation, that Plaintiff should be permitted to work as "independently as possible in order to avoid human interactions" is consistent with the RFC limitation that Plaintiff should have only occasional and superficial interaction with others. Moreover, the limitation to routine, repetitive tasks, and simple decision-making is meant to

minimize Plaintiff's exposure to stressful situations in the workplace. AR 1560. In sum, the ALJ's evaluation of the consistency and supportability factors is a rational reading of the record, supported by substantial evidence.

**5. Scott T. Alvord, Psy.D.**

On June 12, 2019, Dr. Alvord conducted a consultative psychodiagnostic evaluation of Plaintiff. AR 782-86. The ALJ found Dr. Alvord's opinion unpersuasive "to the extent the claimant would be unable to maintain attendance or comp[l]ete a normal workweek due to symptoms related to his mental impairments" because it was based on a one-time examination and was not supported by his own examination results or the record as a whole. AR 1561. The ALJ found Dr. Alvord's statement that Plaintiff "would have difficulty interacting with co-workers and the public" vague because it did not assert any functionally relevant mental limitations. *Id.* Finally, the ALJ concluded that Dr. Alvord did not explain the basis for the assessed functional findings or tie them to specific examination findings or other objective evidence. *Id.*

As discussed above, the ALJ erred by discounting Dr. Alvord's opinion because it was a one-time examination. The ALJ, however, provided additional reasons for rejecting Dr. Alvord's opinion and supported those reasons with substantial evidence. The Court agrees that statements such as Plaintiff "would have difficulty" in any particular area is not a functionally relevant limitation. It provides no guidance as to how much time during an eight-hour workday Plaintiff can tolerate the task (such as interacting with others). Nor does such a statement communicate any guidance into how much time off-task the ALJ should account for in Plaintiff's RFC. Moreover, the objective testing performed by Dr. Alvord showed results largely within normal limits. AR 784-85. Dr. Alvord failed to provide any explanation as to his conclusions about Plaintiff's functional assessment. Thus, the ALJ finding Dr. Alvord's opinion unpersuasive is a

reasonable reading of the record, even if there may be another rational reading of the record. *Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## B. Subjective Symptom Testimony

### 1. Standards

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, caselaw references the term "credibility," it may be used in this Opinion and Order.

state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, 2017 WL 5180304, at *2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *7-8.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2. Analysis

Plaintiff testified that he is unable to work due to chronic migraine headaches, left leg and ankle pain and instability, and PTSD. In his first hearing, in February 2021, Plaintiff testified that he elevates his leg to keep reduce swelling in his ankle and calf. AR 50. Plaintiff stated that he uses crutches "probably 50 percent of the time" and that, despite having several surgeries on his ankle and foot, he is still in extreme pain. AR 51. At his hearing in 2023, Plaintiff stated that he has debilitating headaches "about 27 days out of the month." AR 1587. His treatment for those headaches involves "sitting in a dark room" with a bowl next to him in case of vomiting. AR 1587-88. He stated that, due to an on-the-job injury, he now has back spasms that last anywhere from 18 to 24 minutes, and his only means of dealing with the spasms is to "lay[] in a fetal position." AR 1589. Plaintiff stated in 2021 that his PTSD makes him cautious and nervous and he tends to be hypervigilant. AR 53.

The ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms. AR 1554. The ALJ offered the boilerplate statement that she found that Plaintiff's "symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* Specifically, the ALJ found Plaintiff's symptom testimony was inconsistent with records showing: (1) improvement with treatment; (2) activities of daily living, and (3) objective medical evidence.

### a. Improvement with treatment

A claimant's improvement with treatment "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 404.1529(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [Supplemental Security Income] benefits." *Warre*, 439 F.3d at 1006. Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability."), *superseded on other grounds by regulation*, 20 C.F.R. §§ 404, 416.

Plaintiff underwent a series of left ankle surgeries, first on December 13, 2016, and again on June 20, 2017. AR 597, 617. The ALJ noted that Plaintiff's complaints of left ankle pain were improved after surgery, and he reported his pain was well controlled with oral analgesics. AR 1555 (citing AR 593-94). The ALJ noted that by August 2017, Plaintiff was released to "weight bearing as tolerated" status. AR 593. Plaintiff thereafter continued to improve with physical therapy and medication management and by October 2017, Plaintiff was described as "asymptomatic." AR 582, 585, 588, 1421. The ALJ pointed out that Plaintiff continued to report improved symptoms through March 2019. AR 1556 (citing AR 1394, 1438).

The ALJ did not err in finding Plaintiff's symptoms improved with regular treatment. Plaintiff experienced continued improvements, including improvements to his gait, strength, and stamina. AR 586, 588, 818-19, 1394. Although Plaintiff experienced some increased pain after surgical procedures, Plaintiff's symptoms improved as his recovery progressed. AR 1376, 1412, 1421, 1462, 1467-68, 1471, 1477, 1479. Records from October 2020 show Plaintiff reported that his health was good, he was working, and he was exercising regularly. AR 1491. Moreover, Plaintiff's symptoms improved to where he was able to work as a professional golf instructor, a

position which requires a greater amount of mobility than alleged in his symptom testimony. AR 1811, 1821, 1849, 1867.

### b. Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012), *superseded in part on other grounds by* 20 C.F.R. § 404.1502(a); *Orn*, 495 F.3d at 639. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Molina*, 674 F.3d at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("One does not need to be utterly incapacitated in order to be disabled." (quotation marks omitted)). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan*, 260 F.3d at 1050; *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to

treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ noted Plaintiff's claims of "panic attacks, sleep disturbance due to pain, and nightmares, needing to go to a dark room for migraines, and difficulty with household chores" were inconsistent with reports that he could perform his daily tasks and activities, including taking care of his personal hygiene independently, preparing small meals, and completing some household chores. AR 1554. Additionally, the ALJ pointed out that Plaintiff worked a full-time job at a golf club beginning in July 2020 and "worked at substantial gainful levels periodically through the first quarter of 2023." *Id.* Finally, the ALJ pointed to medical records stating Plaintiff was exercising regularly and working full time. *Id.*

The record supports the ALJ's conclusions, as Plaintiff's daily activities are inconsistent with the level of symptomology alleged. For example, Plaintiff alleged that he experienced migraine headaches 27 days in a month but could sit and watch television and play video games, despite allegations that screens triggered migraine headaches. AR 1551, 1587. Plaintiff can drive, prepare meals, and complete household chores, despite complaints of debilitating pain and limited mobility. Moreover, Plaintiff's work history as a golf instructor is compelling evidence that he is capable of functioning beyond the limitations alleged in his symptom testimony.

### a. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester*, 81 F.3d at 834); *see also Robbins*, 466 F.3d at 883 (holding that an ALJ may not disregard

subjective symptom testimony "solely because it is not substantiated affirmatively by objective medical evidence"); 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The ALJ found Plaintiff's testimony to be inconsistent with the evidence of record. AR 1554. For example, the ALJ found Plaintiff's statements that he had "significant limitations in standing, walking, and sitting as well as squatting, bending, kneeling and mobility issues" to be inconsistent with reports that he was "able to walk four blocks and ascend two flights of stairs." *Id.* The ALJ found Plaintiff's report of "elevating his legs frequently to reduce swelling" inconsistent with the record because "his treatment records fail to reference the need to frequently elevate his legse." *Id.* Regarding PTSD symptoms, the ALJ noted Plaintiff generally had normal findings on mental status exams, and that he was pleasant and cooperative during examinations. AR 1557 (citing AR 571, 629, 1360, 1369, 1457-58, 1462-63, 1474-75).

The ALJ's findings are a reasonable reading of the record. To start, although Plaintiff complained of leg pain and weakness, his records show he regained strength and mobility after surgical intervention. AR 1394, 1412, 1421, 1462, 1468, 1471. Moreover, when advised to proceed with physical therapy to address some weakness in his left leg, Plaintiff declined to follow up with the recommended care program. AR 1508,.

Plaintiff's complaints of PTSD, anxiety, and depression are consistent throughout the record. Despite the severity of his impairments, however, Plaintiff continued to have normal status exams and reported improved symptoms with medication treatment. AR 571, 629, 1360,

1368, 1412-13, 1484-85. The lack of remarkable status exams, coupled with Plaintiff's reports of improved symptoms with medications, supports the ALJ's conclusions.

## C. Lay Witness Testimony

### 1. Standards

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment and "must give reasons that are germane to each witness." *Id.* (quoting *Dodrill*, 12 F.3d at 919). In rejecting lay testimony, however, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115. Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117.

The Commissioner argues that under new regulations governing the evaluation of *medical* evidence, an ALJ need not provide any reason for rejecting *lay* witness statements.

Subsection (d) of the new regulations provides: "We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." 20 C.F.R. § 404.1520c(d). Subsections (a) through (c) lay out the new standards for evaluating medical opinion evidence. *Id.* § 404.1520c(a)-(c). Thus, under the new regulations, the ALJ is not required to use the standards for evaluating medical opinion evidence when evaluating lay witness testimony.

The Ninth Circuit has not yet decided whether the new regulations affect the requirement in the Ninth Circuit that an ALJ must give germane reasons for rejecting lay witness testimony.[3] Some courts have concluded that the new regulations may dispense with an ALJ's obligation to articulate germane reasons for disregarding lay testimony. *See, e.g.*, *Evans v. Comm'r of Soc. Sec.*, 2023 WL 3570083, at *9 (E.D. Cal. May 19, 2023) ("Under the new regulations regarding nonmedical statements, the Commissioner is no longer required to articulate 'germane' reasons for discounting a lay witness's testimony."). The majority of district courts in this circuit, however, conclude that the new regulations have not eliminated an ALJ's obligation to consider and address lay witness testimony. *See, e.g.*, *Christopher M. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 8827678, at *10 (D. Or. Dec. 21, 2023); *Jerald H. v. Comm'r of Soc. Sec.*, 2023 WL 6533477, at *4 (W.D. Wash. Oct. 6, 2023); *Gardner v. Comm'r of Soc. Sec. Admin.*, 2023 WL 6173220, at *6 (D. Ariz. Sept. 21, 2023); *Joseph L. S. v. Kijakazi*, 2023 WL 5611408, at *5 (C.D. Cal. Aug. 30, 2023); *Sharon W. v. Kijakazi*, 2023 WL 246391, at *8 (D. Idaho Jan. 18, 2023).

---

[3] The Commissioner relies on unpublished Ninth Circuit decisions stating that under the revised regulations ALJs are no longer required to articulate a reason in their decision. This Court does not rely on unpublished dispositions of the Ninth Circuit.

On the Court's reading, the new regulations do not eliminate an ALJ's obligation to provide germane reasons to discount lay witness testimony. The revised regulations describe how to evaluate *medical* opinion testimony. The fact that the regulations state that nonmedical opinion testimony *is not held* to the same standard as medical opinion testimony says nothing about the standard to which nonmedical opinion testimony *is held*. Thus, the new regulations are not "clearly irreconcilable" with existing caselaw and are insufficient to overrule binding Ninth Circuit precedent that an ALJ must comment on lay witness testimony and provide germane reasons to discount it. *See Woods*, 32 F.4th at 790 ("[Ninth Circuit] precedent controls unless its reasoning or theory is clearly irreconcilable with the reasoning or theory of intervening higher authority, which in this case is the agency's updated regulations." (cleaned up)).

Further, "[t]he requirement that an ALJ consider lay witness testimony comes from other regulations, regulations that remain intact after the 2017 amendment." *Joseph L. S.*, 2023 WL 5611408, at *5 (citing 20 C.F.R. §§ 416.913(a), 416.929(a)).[4] The Ninth Circuit's requirement from the line of cases described above that an ALJ must provide germane reasons to discount lay witness testimony finds support in this regulatory requirement, which still remains. *See, e.g.*, *Dodrill*, 12 F.3d at 919 ("Disregard of [lay witness testimony] violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. § 404.1513(e)(2)."[5] (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). Thus, the contention "[t]hat an ALJ can disregard

---

[4] The court in *Joseph L. S.* cited the regulatory provisions applicable to Title XVI claims—the same regulatory provisions applicable to Title II claims are in 20 C.F.R. §§ 404.1513, 404.1529.

[5] The requirement that the Commissioner consider nonmedical evidence in adjudicating Title II claims is now in 20 C.F.R. § 404.1529(c)(3), and its designation as a type of evidence is in 404.1513(a)(4).

or reject relevant lay evidence for no reason is inconsistent with the Commissioner's obligation to consider such evidence[] and the rule [that] the ALJ must provide some rationale in order for the Court to meaningfully determine whether the ALJ's conclusions are free of legal error and supported by substantial evidence." *Gary J.D. v. Comm'r of Soc. Sec.*, 2023 WL 5346621, at *14 (W.D. Wash. Aug. 21, 2023).

### 2. Analysis

Plaintiff's wife, Kelsey, filled out a functional report in March 2019. In the report, Plaintiff's wife stated that he cannot "be on his feet, focus, or perform." AR 296. She stated that Plaintiff has migraines and vomiting "15+ days" each month. *Id.* She stated that he sits with his leg elevated most days and cannot wear pants due to pain from surgery. AR 297. In her report, she stated that Plaintiff needs reminders for self-care, and he cannot drive due to medications that make him drowsy. AR 298-99.

The ALJ stated merely that such testimony is "considered evidence from a nonmedical source" and that she was thus not required to "articulate how this evidence was considered in terms of persuasiveness." AR 1562. According to the ALJ, that she had considered the evidence at all in connection with her decision was sufficient. As discussed above, however, this Court does not consider abrogated the ALJ's responsibility to articulate reasons for discounting lay witness testimony, and the ALJ's failure to address the lay testimony of Plaintiff's wife amounts to error. Nevertheless, because the testimony of Plaintiff's wife did not describe any limitations not already addressed in Plaintiff's symptom testimony, this error ultimately is harmless. *See Molina*, 674 F.3d at 1117.

/ / /

/ / /

/ / /

PAGE 25 – OPINION AND ORDER

**CONCLUSION**

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled.

**IT IS SO ORDERED**.

DATED this 14th day of May, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge